COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1614**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017FA184

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

KAREN ELIZABETH MORWAY,

    PETITIONER-RESPONDENT,

  V.

DAVID SETH MORWAY,

    RESPONDENT-APPELLANT-PETITIONER.

APPEAL from orders of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Reversed.*

Before Neubauer, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. David Seth Morway appeals orders of the circuit court requiring him to pay attorney fees on Karen Elizabeth Morway's motion to compel discovery and determining that he engaged in overtrial with respect to three specific issues. We agree with David[1] that the court erroneously exercised its discretion in ordering him to pay Karen's attorney fees associated with her motion to compel because it failed to articulate its rationale or discuss any factual or legal bases for its award. We also agree that the court's determination of overtrial is unsupported by the Record and that Karen's motion for overtrial must be denied. We reverse.

## BACKGROUND

¶2 Karen and David were divorced in March 2019 after nearly 23 years of marriage. The circuit court ordered David to make support payments to Karen based on the parties' income at the time; David was then Assistant General Manager for the Utah Jazz, and Karen was a homemaker. David was demoted in September 2021 and given a ten-month contract with a reduced salary that would expire on June 30, 2022. After David moved the court to modify maintenance due to change in his financial circumstances, the parties stipulated to an amended judgment and reduced maintenance obligation from David to Karen which was filed on May 6, 2022.

¶3 On May 27, 2022, David filed another motion to modify maintenance. His accompanying affidavit stated that his employment with the Jazz would be ending on June 30 and that his income after that date was

---

[1] To avoid confusion, the court shall refer to the parties by their first names.

"undetermined." He further averred that his physical health had deteriorated, listing issues including hip replacements, shoulder surgery, and neck problems, among several others, and stating that his intent to work in the future depended on both his health and the positions available to him. He asked for maintenance to be terminated or held open.

¶4 Karen served David with written discovery requests, seeking information about David's employment and search for employment as well as information about his debts, account balances, and living arrangements. David objected to some of these requests as beyond the scope of discovery and to some as harassing. Karen filed a motion to compel, and a family court commissioner conducted a hearing on her motion on June 21, 2022. The commissioner granted Karen's motion in large part, sustained some of David's objections, and stated that Karen's request for attorney fees would be addressed at the October 27, 2022 hearing on David's motion to modify maintenance. The commissioner ordered reduced maintenance but did not mention attorney fees in his written order following that subsequent hearing.

¶5 After a February 2023 de novo trial on David's motion and posttrial briefing, however, the circuit court awarded additional maintenance and ordered David to pay Karen $10,000 in attorney fees associated with her prior motion to compel. The court explained its decision to award fees in an oral ruling as follows:

> Now there wasn't a whole lot of closing arguments, but I still believe that there's a request for attorney fees from petitioner. I'm looking at it -- I might have misinterpreted this, but really I see it as because of discovery. You know, a trial can happen; I don't think that in the trial that it was overtried, but I am concerned about the response to exchange of information prior, and then the forcing of formal discovery, and then even a motion to compel

3

> discovery before petitioner can get information. And I'm limiting it to that. It -- was -- am I close to what you were requesting or did you want for the actual trial? Because I'm not going to grant that. I think people should be able to have a trial.

¶6 The circuit court further stated that it had insufficient information to address Karen's request for fees associated with litigation *after* the motion to compel and that Karen would file a separate motion on that issue.[2] In that separate motion, Karen asserted multiple grounds for overtrial. After a June 28, 2023 hearing, the court granted Karen's motion with respect to three of these grounds, which the court characterized as the "health issue," the "job search issue," and the "Arizona house issue."

¶7 The health issue related to Karen's assertion that David "inject[ed] health concerns as an excuse for his failure to seek employment," a "ruse" that forced her to incur the expenses of retaining medical and vocational experts and taking the deposition of David's physician. The circuit court determined that it could not "affirmatively say the health issue was a [ruse]" and suggested that David perhaps "abandon[ed] … the health issues" because he either "underestimated his opposition" or because "maybe his health had improved enough by the time it did come to trial." Nevertheless, it concluded there was overtrial on this issue, stating:

> [T]hat's the one area that I think you've got a legitimate point on because I don't think even in his first approach of why he might not be able to work, just shoulder surgery that's not -- -that's not it. He knew he wasn't going to be disabled. Even if he had problems with the shoulder, he still would have been able to work. So I think that caused

---

[2] In her posttrial brief, Karen asserted that she was "an innocent party who [was] the victim of overtrial."

> more expense and unnecessary actions that you had to take on that issue, but I can't really parse anything else out because it's so tied in to the discovery.
>
> So on just that issue, I think there was some overtrial, but I can't say the entire thing was overtrial. … I think out of fairness, you would be entitled to some attorney fees for that particular issue and I don't know what the right percentage is. In my mind, I'm thinking maybe five percent or ten percent of your attorney fees which I don't know what they are, but I can't imagine that issue was much more in terms of percentage of extra work and time for no reason that you had to invest. And I know that there were costs because if I [re]call correctly, you hired experts for that specific issue.

¶8 The job search issue related to Karen's assertion that she had to incur the "expense of preparing and serving David with multiple discovery requests for necessary information due to David's incomplete and illusive responses" regarding his job search efforts. The circuit court stated that Karen was entitled to fees on this issue based on its understanding that David did not produce a timeline of his job search activities until July 18, 2022, which was just before trial. David's counsel explained that the delay in producing that timeline was counsel's fault; he "thought [he] had received and sent to [Karen] the job log and it got messed up on [his] end." The court then said, "I'm going to find that -- I'm parsing that out as it's part of the overtrial and would award -- you can figure out a percentage."

¶9 Finally, the Arizona house issue related to Karen's assertion that David provided "everchanging stories" about the purchase of a 50% interest in his mother's home in Arizona and the subsequent transfer of that interest to his girlfriend. The circuit court awarded overtrial fees for this issue as well, explaining its decision to do so only by saying that it "also saw [this issue] as

something that's separate from the actual discovery where there was the motion to compel."

¶10    Although Karen requested an award of $50,000 in fees on these three issues, the circuit court ordered David to pay a total of $11,967.50 in overtrial fees: $9,500 for the health issue, $2,200 for the job search issue, and $267.50 for the Arizona house issue.  David appeals both the order requiring him to pay attorney fees on Karen's motion to compel discovery and this order determining that he engaged in overtrial.

## DISCUSSION

### I.  Standard of Review

¶11    We review a circuit court's decision to award attorney fees for both discovery sanctions and overtrial using the erroneous exercise of discretion standard.  *See Selmer Co. v. Rinn*, 2010 WI App 106, ¶35, 328 Wis. 2d 263, 789 N.W.2d 621; *Zhang v. Yu*, 2001 WI App 267, ¶12, 248 Wis. 2d 913, 637 N.W.2d 754.  Pursuant to this standard, we uphold the circuit court's decision so long as the Record shows that "the court applied the proper legal standard to the relevant facts using a demonstrated rational process to reach a reasonable conclusion." *Selmer Co.*, 328 Wis. 2d 263, ¶35.

¶12    The circuit court's factual findings, including the question of whether excessive litigation occurred, must be accepted unless they are clearly erroneous.  *Zhang*, 248 Wis. 2d 913, ¶11.  But the question of whether the court's factual findings establish *unreasonably* excessive litigation resulting in overtrial is a question of law we review independently.  *Id.*  The interpretation of a statute governing discovery sanctions, likewise, is a question of law reviewed

6

independently.  *See Rao v. WMA Sec., Inc.*, 2008 WI 73, ¶33, 310 Wis. 2d 623, 752 N.W.2d 220.

## II.  Attorney Fees for Motion to Compel

¶13    As a preliminary matter, to the extent there is a dispute about whether the circuit court was "authorized" to decide the issue of attorney fees on Karen's motion to compel,[3] we note that it was well within the court's discretion to order (or deny) an award of attorney fees.  Karen correctly notes that a court "shall" order the party whose conduct necessitated a successful motion to compel discovery to pay reasonable expenses, including attorney fees, pursuant to WIS. STAT. § 804.12(1)(c)1 unless opposition to the motion was substantially justified or an award is otherwise unjust.  Pursuant to WIS. STAT. § 757.69(1)(p) and (8), court commissioners in family matters assist the circuit court and issue decisions that are always reviewable by the circuit court; the commissioner in this case was acting as an instrument of the circuit court in granting Karen's motion to compel, and the commissioner was not a separate "court" with the unique ability to award fees for Karen's successful motion.  Moreover, circuit courts have "inherent authority to sanction parties for … failure to comply with procedural statutes or rules, and for failure to obey court orders."  *Johnson v. Allis Chalmers Corp.*, 162

---

[3] In David's opening brief, he cites WIS. STAT. § 804.12(1)(c) (2023-24), which he says "only authorizes the court that hears a motion to compel to award fees" and "is designed to ensure that the court that actually hears the motion decides whether a fee award is appropriate."  He then asserts that in this case, "the circuit court did not hear the motion to compel[;] [t]he family court commissioner did, and the commissioner did not award fees on the motion."  In his reply, however, he acknowledges that "a trial court could … engage in a *de novo* review of a court commissioner's decision to not award fees" while reiterating, as we discuss below, that "the court that decides a motion must actually consider the motion and provide a reasoned decision."

All references to the Wisconsin Statutes are to the 2023-24 version.

Wis. 2d 261, 273-74, 470 N.W.2d 859 (1991), *overruled on other grounds by Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, 299 Wis. 2d 81, 726 N.W.2d 898.

¶14 Likewise, David did not forfeit his ability to challenge the circuit court's award of attorney fees, as Karen argues, by failing to discuss the bases for his objections to her discovery requests or by failing to argue that his opposition to her motion to compel was substantially justified at the April 19, 2023 proceeding. David filed a written response to Karen's motion to compel explaining his position that to the extent he had not already complied with her requests, she was seeking information that was not relevant to the issue of maintenance. On April 19, David's counsel informed the court that David objected to the discovery because he believed Karen's requests were "outside the scope of discovery." Finally, in his response to Karen's requested fees, David explicitly "preserve[d] his objection to the award of any attorneys' fees," citing his posttrial reply brief and stating again that his objections were based on a good faith belief that the requests were outside the scope of any issue related to maintenance modification. David has clearly preserved the right to challenge the award of attorney fees for this motion in his appeal.

¶15 The problem lies not with the circuit court's ability to award fees for Karen's motion to compel in its discretion, but with its failure to exercise discretion.

> A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for

the purpose of achieving a reasoned and reasonable determination.

*Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶16    Here, the circuit court did not articulate *any* legal standards or set forth *any* facts upon which it relied in awarding attorney fees on Karen's motion to compel. *See id.*  The entirety of its on-the-record explanation for its award of fees consisted of two sentences in which it noted "concern" about "the forcing of formal discovery, and then even a motion to compel discovery" and a statement that an "award[] of attorney fees through the point of the motion to compel is appropriate."  There was no discussion of WIS. STAT. § 804.12(1)(c) or whether David's objections to the discovery requests were justified.  Nor was there any analysis of any facts pertaining to litigation conduct or the nature of the requested (and/or produced) discovery.  This Record simply does not show that "the court applied the proper legal standard to the relevant facts using a demonstrated rational process to reach a reasonable conclusion." *Selmer Co.*, 328 Wis. 2d 263, ¶35.  We must therefore reverse the order awarding attorney fees on Karen's motion to compel.

## III.  Overtrial

¶17    The family law doctrine of overtrial "may be invoked when one party's unreasonable approach to litigation causes the other party to incur extra and unnecessary fees." *Zhang*, 248 Wis. 2d 913, ¶13.  Circuit courts have the inherent power to order a party that engages in overtrial to pay the opposing party's attorney fees to compensate that party for fees unnecessarily incurred and to deter "unnecessary use of judicial resources." *Id.*, ¶13.  Again, this is a discretionary decision that can be made if the facts found by the circuit court

establish that unreasonably excessive litigation resulting in overtrial took place as a matter of law. *Id.*, ¶¶11-12.

¶18    We conclude that the Record does not support the circuit court's determination that David engaged in overtrial with respect to any of the three issues identified by that court: the health issue, the job search issue, and the Arizona house issue.  First, we analyze the health issue.  Karen's motion for overtrial asserted[4] that "David inject[ed] health concerns as an excuse for his failure to seek employment" such that Karen was forced to incur the expenses of retaining her own experts and deposing David's physician and that this "turned out to be a ruse that was later totally abandoned."  The court found the following facts with respect to this issue before determining that David engaged in overtrial: (1) the health issue was not a ruse, and the issue was abandoned before the de novo trial either due to zealous opposition from Karen or improvement in David's health; (2) David "knew he wasn't going to be disabled" because of "shoulder surgery" or "problems with the shoulder," so David "still would have been able to work;" and (3) "that caused more expense and unnecessary actions" for Karen.

¶19    The first finding, that David's raising his health issues was not a ruse, supports neither the factual finding that there was excessive litigation nor the legal conclusion that excessive litigation was unreasonable such that it constituted overtrial.  *See Zhang*, 248 Wis. 2d 913, ¶11.  Implicit in this finding is the fact that David's health issues were legitimate.

---

[4] Notably, Karen's motion did not cite evidence supporting these allegations.

¶20    The second finding is clearly erroneous in that it implies that David changed his position regarding disability from medical issues related to his shoulder.  The Record does not show that David ever having testified that he would be disabled or unable to work because of his shoulder.  To the contrary, he stated in a May 2022 affidavit that he intended to take some time off to focus on his physical health (which had deteriorated due to at least six issues in addition to his shoulder) and stated in a discovery response served the same month that his "medical issues have not prevented him from working full-time in the past, but have been accumulating over the years and prevent [him] from performing in the same capacity that he has in the past."  The trial transcript that Karen points to on this subject (from the de novo trial in February 2023) includes testimony from David that although he had several severe and painful issues, he was not disabled and did not believe his health issues would prevent him from getting another job.

¶21    Finally, the fact that Karen had to incur expenses to litigate the health issue—even if these expenses turned out to be "unnecessary" at the time of the de novo trial due to David's "abandonment" of the issue—does not support the finding of excessive litigation.  Karen provided no evidence that the issue was abandoned for a reason other than that proffered by David's counsel: that, although the issues were "impacting [David's] approach to finding a new career" and thus presented at the October 2022 trial to the commissioner, "David was able to get his health issues relatively under control" such that it was unnecessary to present them at the February 2023 de novo trial.  The circuit court acknowledged this even as it speculated that David may have also dropped the issue due to Karen's zealous opposition.  It would be illogical to hold a party liable for overtrial for streamlining issues during the litigation process due to changed circumstances when one of the points of the overtrial doctrine is to deter the

unnecessary use of judicial resources. *See Zhang*, 248 Wis. 2d 913, ¶13. Thus, the facts as found by the circuit court do not, as a matter of law, constitute unreasonably excessive litigation resulting in overtrial of the health issue. *See id.*, ¶11.

¶22 We turn to the job search issue. Karen's motion for overtrial asserted that David failed to apprise her of his job search efforts. The sole fact articulated by the circuit court in its decision on this issue was that "it was either the day before or two days before the actual trial that [the] opposing side actually got the job search." The parties apparently agree that a single document, a timeline reflecting David's job search efforts, was produced just before trial (though Karen does not explicitly concede that the late production was due to a mistake by David's counsel, as he contends). The court failed to analyze how this fact supported its conclusion of unreasonably excessive litigation or an abuse of judicial resources. *See Zhang*, 248 Wis. 2d 913, ¶11. Although Karen contends that her motion provided a "detailed history of David's ever-changing positions on his job search efforts," David provided a response to her characterization of the events in an affidavit stating that he diligently produced the requested discovery. The court did not refer to any other facts upon which it relied, the parties' conflicting pleadings, or the late production of the job search timeline as one *example* of behavior constituting excessive litigation. Based on this absence of articulated facts or analysis, we cannot affirm the court's decision to award fees for overtrial on the job search issue as an appropriate exercise of discretion.

¶23 Finally, we address the Arizona house issue. The circuit court's entire discussion of its decision follows:

> And then the Arizona house issue is what I also saw as something that's separate from the actual discovery where there was the motion to compel.

We agree with David that the court's statements as they pertain to this issue show a failure to exercise discretion; they do not include any factual or legal bases for the court's decision, nor do the statements demonstrate a rational decision-making process. *See **Zhang***, 248 Wis. 2d 913, ¶12; *see also **Selmer Co.***, 328 Wis. 2d 263, ¶35.

¶24 For the foregoing reasons, we reverse the orders of the circuit court requiring David to pay attorney fees for Karen's motion to compel discovery and for overtrial based on each of the three issues specified by the court.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.